1
2
3
4
5
6
7            UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9

10   STARBUZZ TOBACCO, INC.,

11                          Plaintiff,       CASE NO: SACV 19-408 JVS (DFMx)

12          v.

13   GOLD STAR TOBACCO, INC. ET          REQUEST TO THE REGISTER OF
     AL.,
14                                        COPYRIGHTS PURSUANT TO
                           Defendant.
15                                        17 U.S.C. § 411(b)(2)

16

17

18      **REQUEST TO THE REGISTER OF COPYRIGHTS PURSUANT TO**

19                   **17 U.S.C. § 411(b)(2)**

20

21   Register of Copyrights
22   U.S. Copyright Office
     P.O. Box 70400
23   Washington, DC 20024-0400

24

25                              1

Plaintiff Starbuzz Tobacco, Inc. ("Starbuzz") brought this action for copyright infringement against Defendants Gold Star Tobacco, Inc. ("Gold Star") and Samer Abdelmaseh ("Abdelmaseh") (together—"Defendants") .  The Copyright Registration numbers of the work that Starbuzz alleges was infringed is VAu 1-313-168 (the "Design").

In response to these claims, Defendants filed a First Amended Answer ("FAA") and a counterclaim seeking a declaration that the copyright for VAu 1-313-168 is invalid because Starbuzz knowingly submitted inaccurate information when filing the copyright registration application.  (FAA, Dkt. No. 24 at 40–42.)

In the attached Order Regarding Motion for Issuance of Request to the Register of Copyrights, the Court determined that Defendants had plausibly alleged that Starbuzz knowingly submitted inaccurate information in connection with his application for Copyright Registration No. VAu 1-313-168 because Abdelmaseh had sent his GOLD STAR® word and logo trademarks to Starbuzz's graphic designer before the Design was finalized.  Because the case is still in its early stages, the Court has made no determinations on these allegations as a matter of law.

In light of the decision in the attached Order Regarding Motion for Issuance of Request to the Register of Copyrights, pursuant to 17 U.S.C. § 411(b)(2), the Court requests a response by the Register of Copyrights to the following inquiries:

2

1) Would the Register of Copyrights have refused Starbuzz's Copyright Registration No. VAu 1-313-168 for two-dimensional artwork, registered on April 4, 2018, if the Register of Copyrights had known that:

a) although Starbuzz did not identify the work as being a derivative work, Starbuzz knew that (i) GOLD STAR® word trademark(s), and (ii) GOLD STAR® logo trademark(s), which are owned by a third party, preexisted it?

b) although Starbuzz did not identify the work as being a derivative work, Starbuzz had received authorization from the third party who owned the GOLD STAR® word and logo trademarks to create the Design incorporating those trademarks?

2) If the Register of Copyrights opines that it would have refused Starbuzz's Copyright Registration No. VAu 1-313-168, would the Register of Copyrights accept a supplementary registration by Starbuzz pursuant to §§ 1802.2; 1802.6(J) of the Compendium despite

3

a) Starbuzz failing to disclose the preexisting GOLD STAR® word trademark(s) and GOLD STAR® logo trademarks?

b) Starbuzz failing to disclose the preexisting Canadian trademark?

The Court requests a response to these matters on or before August 5, 2019. The Clerk of Court shall send this Request, including the attached Order Regarding Motion for Issuance of Request to the Register of Copyrights (Exhibit 1) to the Register of Copyrights.

**IT IS SO ORDERED.**

DATED: July 3, 2019

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE

4

# Exhibit 1

1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**
9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10
11   Starbuzz Tobacco, Inc.,                )        **SACV 19-00408JVS(DFMx)**
                                             )
12                    Plaintiff,             )
                                             )
13          vs.                              )     **Order Regarding Motion for**
                                             )     **Issuance of Request to the**
14   Gold Star Tobacco Inc, et al.,          )     **Register of Copyrights**
                                             )
15                                           )
                     Defendant,              )
16   _____          )
17
18
19
20
21
22
23
24
25
26
27
28

Starbuzz Tobacco, Inc. v. Gold Star Tobacco Inc., et al.,
8:19-cv-408 JVS (DFMx)

## Order Regarding Motion for Issuance of Request to the Register of Copyrights

Defendants Gold Star Tobacco, Inc. ("Gold Star") and Samer Abdelmaseh ("Abdelmaseh") (together—"Defendants") filed a motion for issuance of request to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2) and to stay discovery pending receipt of advice from the Register of Copyrights.  (Mot., Dkt. No. 39.) Plaintiff Starbuzz Tobacco, Inc. ("Starbuzz") opposed the motion.  (Opp'n, Dkt. No. 42.)  Defendants filed a reply.  (Reply, Dkt. No. 47.)

For the following reasons, the Court **grants** the motion for issuance of a request to the Register of Copyrights and **denies** the motion to stay discovery.

## I. BACKGROUND

The following facts are either alleged in the Complaint or are otherwise undisputed by the parties.  Starbuzz has been a manufacturer and supplier of shisha tobacco and other related products since 2005.  (Complaint, Dkt. No. 1 ¶ 24.)  In about 2015, Starbuzz and Abdelmaseh, an owner and operator of Gold Star, discussed entering into business together for the manufacture and sale of shisha tobacco co-branded under the "Gold Star Tobacco" label.  (Id. ¶¶ 13, 25.)  In November of 2015, Abdelmaseh and Wael Elhalwani ("Elhalwani") met in Jordan to discuss this venture.  (Abdelmaseh Decl., Dkt. No. 39-2 ¶ 7.)  Elhalwani told Abdelmaseh that he was satisfied that Abdelmaseh owned the GOLD STAR trademark and flame logo in the U.S. for tobacco.  (Id. ¶ 8.)

In an email dated November 4, 2015 at 6:57 AM, Abdelmaseh sent Alejandro Arce ("Arce"), a graphic designer for Starbuzz, images of his Gold Star Charcoal and Gold Star Hookah Plus logos via.  (Email, Dkt. No. 42-1, Ex. A.) The images appeared as follows:

1



(Id.)

On November 5, 2015, Arce completed the initial design for the Gold Star Tobacco logo for use in connection with the planned business venture (the "Design"):



(Id. ¶ 6; Complaint, Ex. A.)  Starbuzz showed Abdelmaseh the Design as a potential logo for the planned business venture, but the business plans between Starbuzz and Defendants never materialized.  (Id. ¶¶ 27-28.)  Starbuzz never assigned any rights to the Design to Defendants or otherwise authorized Defendants to use the Design.  (Id. ¶ 30.)

On January 20, 2016, Abdelmaseh filed applications for registration of trademarks with the United States Patent and Trademark Office ("USPTO") for "GOLD STAR CHARCOAL PLUS SINCE 2012" and "Gold Star Charcoal" that indicated that their first use was January 1, 2015.  (Dkt. No. 39-1 at p.12–13.)  The USPTO eventually registered these marks as Reg. No. 5,031,249 on August 30, 2016 and Reg. No. 5,053,328 ("GOLD STAR® logo") on October 4, 2016, respectively:



(Id.)

In 2018, Starbuzz discovered that Defendants used a design that is identical or substantially similar to the Design for use in their business without Starbuzz's consent ("Infringing Design"):



(Id. ¶ 31.)  Defendants are using and displaying the Infringing Design in connection with the sale, distribution, advertisement, and promotion of products. (Id. ¶ 34.)

When viewed together, the Design and Infringing Design appear as follows:

3



(Id. ¶ 39.)

On March 2, 2018, Abdelmaseh filed an application with the USPTO to register the Infringing Design as a design trademark (USPTO Serial No. 87/818,151) knowing that he was not the owner of the Design and was unauthorized to use or apply to register it.  (Id. ¶¶ 43-44.)  Abdelmaseh also falsely stated that he has been using the Infringing Design since July 2, 2015, since that date was nearly four months before the Infringing Design was created.  (Id. ¶¶ 46-47.)  Starbuzz opposed the application, arguing that Abdelmaseh's use of the Infringing Design infringes on Starbuzz's Design and is therefore an unlawful use in commerce.  (Id. ¶ 75.)

On April 4, 2018, Starbuzz applied to register the Design with The United States Copyright Office (the "Copyright Office").  (Id. ¶ 35.)  Starbuzz's application did not disclose Abdelmaseh's preexisting GOLD STAR® logo trademark.  The GOLD STAR® logo and Design appear together side-by-side:



The Copyright Office issued a Certificate of Registration for the Design as Registration No. VAu 1-313-168 (the "Certificate") with an effective date of April 4, 2018.  (Id. ¶ 35, Ex. C.)

## II. LEGAL STANDARD

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  "A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1) (emphasis added).  "In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(2) (emphasis added).  "[I]nadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."  Urantia Found. v. Maaherra, 114 F.3d 955, 963 (9th Cir. 1997).  "[T]he plain language of § 411(b) . . . does not require a showing of fraud, but only that the claimant included inaccurate information on the application 'with knowledge that it was inaccurate.'"  Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC, 925 F.3d 1140, 1147 (9th Cir. 2019) (quoting 17 U.S.C. § 411(b)(1)(A)).

## III. DISCUSSION

## A.    Request to Register of Copyrights Upon Allegations

Defendants argue that the Court must issue a request to the Register of Copyrights to determine if the Copyright Office would have refused registration for certificate No. VAu 1-313-168 had it known that Starbuzz had knowingly failed to disclose in its copyright application that the Design included Abdelmaseh's 2013 GOLD STAR word trademarks and GOLD STAR® logo as

preexisting works.  (Mot., Dkt. No. 39 at 22.)  Defendants point out that the plain language of 17 U.S.C. § 411(b)(2) requires that the Court seek advice from the Register of Copyrights provided that it "is *alleged*" rather than *proven* that inaccurate information was knowingly included.  (Id. at 10.)  See Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 3–4, n. 19, Urban Textile, Inc. v. Fashion Avenue Knits, Inc., et al., No. 2:16-cv-06786-MWF (KSx) (C.D. Cal., Dec. 29, 2017) ("To be sure, the plain text of section 411(b)(2) permits courts to seek the Register's advice based on a mere allegation that the registrant knowingly included inaccurate information in a registration application. In such cases, like the one here, the Register's response will assume the truth of those allegations, solely for purposes of determining whether the inaccuracies would have been material.").  Defendants then contend that Starbuzz knew that it had failed to include information about the preexisting GOLD STAR marks because in November of 2015, Abdelmaseh met with Elhalwani in Jordan, and Elhalwani "advised [] Abdelmaseh that Starbuzz had conducted trademark searches of the GOLD STAR brand and flame logo in order to ensure that Abdelmaseh owned them in the U.S."  (Mot., Dkt. No. 39 at 20.)

Starbuzz instead points to reasons that Defendants should first make a showing that inaccurate information was knowingly included in the copyright application before the Register of Copyrights is to be consulted to prevent litigants from using such advice as a delay tactic.  (Opp'n, Dkt. No. 42.)  See Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc., 2017 U.S. Dist. LEXIS 115318, *10-11 (C.D. Cal. Mar. 6, 2017).  The Seventh Circuit has explained the reasoning for courts determining that inaccurate information was included in a copyright application prior to seeking advice from the Register of Copyrights:

> Given its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future.  See, e.g., Olem Shoe Corp. v. Wash. Shoe Co., No. 09-cv-23494, 2010 U.S. Dist. LEXIS 143590, at *6 n.4 (S.D. Fla. Sep. 3, 2010) (noting section 411(b)(2)'s potential as a "weapon to delay the proceedings in district court").  Although the statute appears to mandate that the Register get involved "[i]n any case in which inaccurate information [in an application for copyright registration] is alleged," 17 U.S.C. § 411(b)(2), input need not be sought immediately after a party makes such a claim.

> <u>Instead, courts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice</u> on materiality.  In other words, a litigant should demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office.  17 U.S.C. § 411(b)(1)(A).  Once these requirements are met, a court may question the Register as to whether the inaccuracy would have resulted in the application's refusal.  Aside from minimizing the risk that parties would use this provision as a delay tactic, this approach has the added benefit of an endorsement from the Register.  <u>See</u> Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 12, <u>Olem Shoe</u>, No. 1:09-cv-23494 ("[B]efore asking the Register whether she would have refused to register a copyright . . . a court should feel free to determine whether there is in fact a misstatement of fact.").  When faced with this situation in the future, courts should tread carefully and employ this mechanism only when necessary.

<u>DeliverMed Holdings, LLC v. Schaltenbrand</u>, 734 F.3d 616, 625 (7th Cir. 2013) (emphasis added).  The Register of Copyrights has recommended following this approach:

> While 17 U.S.C. § 411(b)(2) requires the court to seek the Register's advice when there is an allegation that an application contains inaccurate information, the Register observes that the statute says nothing about the timing of the request.  The Register suggests that, at a minimum, the court retains the power to delay the request until a factual record has been developed, e.g., through affidavits or discovery.  The Register believes that if a court concludes that the bare allegations are unsupported by any facts, the court would be free to refrain from issuing requests to the Register.  The court could, for example, entertain a motion for partial summary judgment prior to referring certain

7

questions to the Register.  If a court concludes that there is no factual basis for certain allegations, such as an allegation that the plaintiff is not the author or copyright owner of the work in question, the court might come to a conclusion on such issues as a matter of law, in which case there may be no need to refer the question to the Register.  In other words, before asking the Register whether she would have refused to register a copyright if she had known about a particular alleged misstatement of fact on an application, a court should feel free to determine whether there is in fact a misstatement of fact.

Response, Olem Shoe, No. 1:09-cv-23494, 11–12 (S.D. Fl. Oct. 14, 2010).  "The Register cautions, however, that if that issue depends even in part on interpretation or understanding of the Copyright Office's registration practices, the more prudent practice – and the practice anticipated in § 411(b) – would be to refer the question to the Register."  Id. at 12, n. 5.

    In accordance with both the statute and the Register of Copyrights' Response in Olem Shoe, the Court thinks it appropriate to consider whether Defendants' allegations that inaccurate information was knowingly included in Starbuzz's application are supported by the undisputed facts currently set forth by the parties.  While the case is still in its early stages such that the Court does not have before it all facts on which the parties may ultimately rely, as it would at the summary judgment stage, the facts currently available are still useful for determining whether Defendants' allegations are at least plausible based on the evidence available.[1]

## B.    Inaccurate Information

---

[1] The Court understands that the Register of Copyrights' position is that "the court retains the power to delay the request until a factual record has been developed," and the Court likewise acknowledges that questions to the Register of Copyrights may be clearest and the Register of Copyrights' advice may be most useful when a factual record has been developed.  Response, Olem Shoe, No. 1:09-cv-23494 at 11.  The Court does not believe, however, that the statute provides the Court with the power to delay a request that is based on plausible allegations that inaccurate information was knowingly included in an application for copyright registration when the statute unambiguously states that the Court shall request advice under such circumstances. See 17 U.S.C. § 411(b)(2).

The Copyright Act states that "[t]he application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include –

> (9) in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief general statement of the additional material covered by the copyright claim being registered; and

> (10) any other information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright.

17 U.S.C. § 409.

A "derivative work" is defined as:

> [A] work based upon <u>one or more preexisting works</u>, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work <u>may be recast, transformed, or adapted</u>. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101 (emphasis added).  The Ninth Circuit has found "that reference to 'preexisting works,' as compared with the reference to 'preexisting materials' in the coordinate definition of a 'compilation,' implies that a derivative work, unlike a compilation, must incorporate that which itself is the subject of copyright."  1 Nimmer on Copyright § 3.01 (2019); <u>Ets-Hokin v. Skyy Spirits, Inc.</u>, 225 F.3d 1068, 1079 (9th Cir. 2000).[2]  "A work is not derivative unless it has substantially copied from a prior work.  If what is borrowed consists merely of ideas and not of

---

[2] In <u>Ets-Hokin</u>, the Ninth Circuit quotes an earlier version of Nimmer with similar language and meaning.

9

the expression of ideas, then, although the work may have in part been derived from prior works, it is not a derivative work."  1 Nimmer on Copyright § 3.01 (2019).  "[A] work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work."  Id.  Failure to "identify preexisting work upon which a derivative work is based" on an application to the Register constitutes the inclusion of "inaccurate information" under 17 U.S.C. § 411(b)(1).  Unicolors, Inc. v. Burlington Stores, Inc., et al., No. 15-cv-3866 DMG (ASx) (C.D. Cal. Dec. 10, 2015).

Defendants argue that Starbuzz's copyright application for the Design contained inaccurate information because it failed to disclose Abdelmaseh's prior 2013 GOLD STAR word trademarks and GOLD STAR® logo trademark.  (Mot., Dkt. No. 39 at 11; Kohan Decl., Dkt. No 39-1, Exs. 1–3.)  Abdelmaseh "owns U.S. trademark registrations for the trademark GOLD STAR (word marks and design) including Reg. Nos.: 4,534,288; 4,489,270; 4,668,495; 4,879,623; 5,031,249; and 5,053,328, in Class 34 (smokers' articles, including tobacco) and Class 3 (incense)."  (Mot., Dkt. No. 39 at 11.)  Defendants indicate that Starbuzz's Design is "strikingly similar to [Abdelmaseh's] GOLD STAR[® ] logo" because "the central flame/lamp design surrounded by a circle or ring featuring [Abdelmaseh's] GOLD STAR® trademark written around the circle or ring, are all nearly identical."  (Id. at 13.)  Since the same colors and images are used, Defendants contend that Starbuzz's Design was derived from the GOLD STAR® logo labels.  (Id. at 13–14.)  Defendants suggest that because Starbuzz did not disclose "(a) at least the derivative nature of the [Design] as being copied from, derived from, and/or based on Defendant [Abdelmaseh's] prior GOLD STAR[® logo], and (b) that the text in Starbuzz's [Design] was copied from [Abdelmaseh's] prior GOLD STAR® word trademarks," Starbuzz included inaccurate information in applying for registration of an original work.  (Id. at 15.)  See GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co., 782 F. Supp. 763, 774 (W.D.N.Y. 1991) ("Clearly the label and carton which are the subject of plaintiff's copyrights in the case at bar are not original in every detail, since they make use of preexisting Gerolsteiner trademarks and logos. . . . While the precise arrangement of the words and images may have been Gauntlett's, then, the use of the same typeface, colors, and images puts it beyond question that the label was derived from Gerolsteiner's

10

earlier labels.  If Gauntlett's label were copyrightable at all, therefore, it was only so as a 'derivative work.'").[3]

Starbuzz instead argues that the Design "is an original work created by Starbuzz's former employee, [Arce], and was not derived, copied from, inspired by, or otherwise based on [Abdelmaseh's] trademarks.  (Opp'n, Dkt. No. 42 at 8.) Specifically, Starbuzz asserts that "Arce independently came up with the idea for the 'gold-colored big 'G' with a gold-colored star in between the gap of the 'G'" that now contains a "metallic sheen" with the gold color, and "[t]he design created by Arce further consists of a new and different flame and bowl."  (Id. at 8–9.) Because Starbuzz considers the Design to be "original and unique," it indicates that the copyright application did not contain inaccurate information.  (Id. at 9.) Starbuzz additionally contends that it was not required to identify Abdelmaseh's previous logos in "space 6" of the copyright application because the Design does not fit within the definition of a "derivative work."  (Id.)

First, Starbuzz points out that the Abdelmaseh's word trademarks may not be copyrightable because "[b]rand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed."  Kitchens of Sara Lee, Inc. v. Nifty Foods Corp., 266 F.2d 541, 544 (2d Cir. 1959).  Second, Starbuzz argues that the Design is not substantially copied from the GOLD STAR® logo because the Design contains a gold "G" with a star in the letter's gap in lieu of a black circle surrounding the flame, and "the 'expression' of the flame and the bowl are different."  (Opp'n, Dkt. No. 42 at 11.)  See 1 Nimmer on Copyright § 3.01 (2019) ("If what is borrowed consists merely of ideas and not of the expression of ideas, then, although the work may have in part been derived from prior works, it is not a derivative work."). Third, Starbuzz emphasizes that Defendants have not yet shown that the GOLD STAR® logo is subject to copyright protection because Abdelmaseh has only filed an application for copyright registration, and that application has not yet been granted registration.  (Opp'n, Dkt. No. 42 at 12.)  Starbuzz likewise suggests that any copyright registration of the logo would be subject to challenge for lack of originality.  (Id.)

---

[3] The Ninth Circuit has noted some disapproval of GB Marketing USA.  See Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1145 (9th Cir. 2003).

The Court finds that the undisputed facts support the conclusion that inaccurate information was submitted on Starbuzz's copyright application for the Design.  The Design includes a three-layered bowl and yellow flame outlined in red and surrounded by a circular shape, as does the GOLD STAR® logo.  While Arce may not have copied the exact shape of the flame and bowl, the Design still contains the same expression as the GOLD STAR® logo.

As to Starbuzz's point  that the GOLD STAR® logo may not be copyrightable, the Court declines to substitute its judgment for that of the Copyright Office, especially since Starbuzz represents that Abdelmaseh has submitted an application for the logo's registration, which remains pending. (Opp'n, Dkt. No. 42 at 12.)  Since the Court believes that this case may "depend[] . . . in part on interpretation or understanding of the Copyright Office's registration practices" with respect to derivative works, the Court will refer its questions to the Register provided that the facts known are consistent with Defendants' allegations that Starbuzz knowingly omitted information regarding Abdelmaseh's GOLD STAR® logo.  Response, Olem Shoe, No. 1:09-cv-23494, at 12, n. 5.

## C.   Knowledge of the Inaccuracy

Space 6 of the Copyright Office's Form VA, entitled "Derivative Work or Compilation," states:

> **General Instructions:** Complete space 6 if this work is a "changed version," "compilation," or "derivative work," and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain.  A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  A "derivative work" is "a work based on one or more preexisting works."  Examples of derivative works include reproductions of works of art, sculptures based on drawings, lithographs based on paintings, maps based on previously published sources, or "any other form in which a work may be recast, transformed, or adapted."  Derivative

12

works also include works "consisting of editorial revisions, annotations, or other modifications" if these changes, as a whole, represent an original work of authorship.

**Preexisting Material** (space 6a): Complete this space and space 6b for derivative works.  In this space identify the preexisting work that has been recast, transformed, or adapted. Examples of preexisting material might be "Grunewald Altarpiece" or "19th century quilt design." Do not complete this space for compilations.

**Material Added to This Work** (space 6b): Give a brief, general statement of the additional new material covered by the copyright claim for which registration is sought.  In the case of a derivative work, identify this new material. Examples: "Adaptation of design and additional artistic work"; "Reproduction of painting by photolithography"; "Additional cartographic material"; "Compilation of photographs."  If the work is a compilation, give a brief, general statement describing both the material that has been compiled and the compilation itself.  Example: "Compilation of 19th century political cartoons."[4]

The Copyright Act provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).

Starbuzz asserts that any inaccurate omission of information regarding Abdelmaseh's GOLD STAR® logo was merely inadvertent because Starbuzz filed the application with a good faith belief that the Design was an original work, and there was no intent to defraud the Copyright Office.  (Opp'n, Dkt. No. 42 at 13.) Moreover, Starbuzz argues that "even if the [] Design is determined by the Court to be a derivative, the Register of Copyrights would likely still have granted registration because it is a work that was created with [Abdelmaseh's]

---

[4] https://www.copyright.gov/forms/formva.pdf (emphasis in bold in original)(emphasis underlined added).

authorization and approval" because Abdelmaseh emailed the logo to Arce. (Opp'n, Dkt. No. 42 at 14) (emphasis omitted). Starbuzz maintains that no permission from Abdelmaseh is required to copyright the Design, so long as he authorized use of the GOLD STAR® logo. See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1019–20 (9th Cir. 2012) (reversing a grant of summary judgment on a claim of copyright infringement when a reasonable jury could have found an implied license existed based on conduct); Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 523 (7th Cir. 2009) ("[T]here is nothing in the Copyright Act requiring the author of a derivative work to obtain permission to copyright his work from the owner of the copyright in the underlying work."). In addition, Starbuzz requests that the Court allow it to file a supplementary registration if the Court finds that its application information was inaccurate. (Opp'n, Dkt. No. 42 at 19.)

Defendants point out that it is undisputed that Starbuzz knew of the GOLD STAR® logo when the Design application was submitted because Arce received pictures of it the day before he finalized the Design. (Reply, Dkt. No. 47 at 16.) In addition, they emphasize that a showing of fraud is not required under the circumstances. (Id.) See Gold Value, 925 F.3d at 1147 ("[T]he plain language of § 411(b) . . . does not require a showing of fraud, but only that the claimant included inaccurate information on the application 'with knowledge that it was inaccurate.'").[5]

In response to Starbuzz's argument that Abdelmaseh authorized the use of the GOLD STAR® logo, Defendants suggest that 17 U.S.C. § 204(a) requires that the transfer of the right to use preexisting designs in a copyrighted work must be in writing. (Reply, Dkt. No. 47 at 21.) See Cunningham v. Seymour, No. CV1108095DMGAJWX, 2012 WL 12894699, at *3 (C.D. Cal. Feb. 9, 2012) (requiring that a "work made for hire" contain a written instrument signed by the parties or that a transfer of copyright ownership be in writing to comply with the Copyright Act). In the absence of express written authorization to use the GOLD STAR® logo, Defendants say that there was no consent for its use for the Design registration. (Reply, Dkt. No. 47 at 21.)

---

[5] Both parties cite the district court opinion in Gold Value. The Ninth Circuit affirmed the district court's decision in a binding holding while briefing for this motion was ongoing.

The Court finds that the facts known likewise support the allegation that any inaccurate information was knowingly included in the copyright application because Starbuzz was aware of the GOLD STAR® logo long before it completed the application.  See Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (citation omitted).  Because the case is still at an early stage, however, the Court makes no finding that inaccurate information was knowingly submitted as a matter of law, especially since the parties dispute whether Starbuzz had authorization to incorporate the trademarks; rather, the Court finds only that the allegations are plausible in light of the facts currently known. Because Defendants plausibly allege that inaccurate information was knowingly included in Starbuzz's application, the Court will request advice from the Register of Copyrights as to whether it would have refused registration generally because of a known inaccuracy.  In addition, the Court will request whether the Register of Copyrights would have still refused registration even if Abdelmaseh had provided authorization to incorporate his trademarks in the Design.

**D.     Request to the Register of Copyrights**

Defendants request that the Court pose the following question to the Register of Copyrights:

> Would the Register of Copyrights have refused Starbuzz's Copyright Registration No. VAu 1-313-168 (for two-dimensional artwork covering a circle and flame design, under the title "Goldstar Tobacco Since 2012"), registered on April 4, 2018, if the Register of Copyrights had known that although Starbuzz did not identify the work as being a derivative work, Starbuzz had submitted its proposed circle and flame design artwork incorporating and based upon the preexisting: (i) GOLD STAR® word trademark(s), and (ii) GOLD Star circle and flame design trademark(s), that are owned by a third party?

(Mot., Dkt. No. 39 at 24.)

15

Starbuzz requests that the question to the Register of Copyrights be re-framed and posed in the following form:

> Had the Register of Copyrights known about the preexisting "Gold Star Charcoal Logo" at the time of Starbuzz's application, would it have refused Starbuzz's Copyright Registration No. VAu 1-313-168 even though the lack of disclosure was because (a) Starbuzz believed in good faith that it was an independent creation; and (b) Starbuzz was authorized to base its design on the "Gold Star Charcoal Logo" as part of a planned business venture with the owner of the Gold Star Charcoal Logo?

(Opp'n, Dkt. No. 42 at 23.)  In addition, Starbuzz requests that the Court ask whether the inaccurate information on the registration is correctable:

> If the Register of Copyrights opines that it would have refused Starbuzz's Copyright Registration No. VAu 1-313-168 had it known about the preexisting Gold Star Charcoal Logo and the circumstances surrounding Starbuzz's lack of disclosure about the Charcoal logo, would the Register of Copyrights accept a supplementary registration by Starbuzz pursuant to §§ 1802.2; 1802.6(J) of the Compendium?

(Id. at 23–24.)

Defendants argue that the additional elements of the Design are not entitled to copyright protection.  (Reply, Dkt. No. 47 at 26.)  Specifically, Defendants suggest that the "stylized 'G' with a star in the gap of the 'G'" cannot be registered because it involves "letters" and "common symbols and shapes, such as a . . . star." (Id.) (citing Copyright Office Circular 33).  In addition, Defendants indicate that the "multidimensional golden color" of the G and the blank background are not copyrightable because they involve "mere variations of typographic ornamentation, lettering or coloring."  (Id.) (citing 37 C.F.R. § 202.1(a)).  Similarly, the words "Goldstar Tobacco" in capital letters wrapped around the "G" and the words "Since 2012" above the flame are not copyrightable according to Defendants because they involve "words and short phrases such as names, titles, and slogans." (Id.) (citing 37 C.F.R. § 202.1(a)).  While Defendants concede that the flame on

top of the pedestal lamp might otherwise be subject to copyright protection, they indicate that because it is substantially identical to the GOLD STAR® logo, it cannot now receive such protection.  (Id. at 27.)  Finally, Defendants point to Abdelmaseh's Canadian Trademark Reg. No. TMA958490 (the "Canadian Trademark"), which Abdelmaseh represents was on the internet as early as March 17, 2015 as evidence that the "G" with the star also involves preexisting design elements:





(Abdelmaseh Suppl. Decl., Dkt. No. 47-2, Exs. 1, 2.)

The Court believes that both questions in some form are worth posing to the Register of Copyrights.  The answers to these questions may prevent the parties from engaging in needless litigation.  Thus, the Court asks the Register of Copyrights the following:

1) Would the Register of Copyrights have refused Starbuzz's Copyright Registration No. VAu 1-313-168 for two-dimensional artwork, registered on April 4, 2018, if the Register of Copyrights had known that:

> a) although Starbuzz did not identify the work as being a derivative work, Starbuzz knew that (i) GOLD STAR® word trademark(s), and (ii) GOLD STAR® logo trademark(s), which are owned by a third party, preexisted it?

> b) although Starbuzz did not identify the work as being a derivative work, Starbuzz had received authorization from the third party who owned the GOLD STAR® word and logo trademarks to create the Design incorporating those trademarks?

2) If the Register of Copyrights opines that it would have refused Starbuzz's Copyright Registration No. VAu 1-313-168, would the Register of Copyrights accept a supplementary registration by Starbuzz pursuant to §§ 1802.2; 1802.6(J) of the Compendium despite

> a) Starbuzz failing to disclose the preexisting GOLD STAR® word trademark(s) and GOLD STAR® logo trademarks?

> b) Starbuzz failing to disclose the preexisting Canadian trademark?

The Court will immediately request that the Register of Copyrights responds to this matter on or before August 5, 2019. The Clerk of Court shall send this Request to the Register of Copyrights, including as an exhibit the final court order for this motion.

## E.    Motion to Stay

18

"[F]ederal district courts in California have applied a two-part test when evaluating [a request to stay discovery]: (1) the pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed; and (2) the court must determine whether the pending, potentially dispositive motion can be decided absent additional discovery." Unicolors, No. 15-cv-3866 DMG (ASx) at 8–9.

Here, because the factual record has not been fully developed, the Court cannot make a determination as a matter of law that Starbuzz submitted the application with knowledge that inaccurate information was included.  There remain disputed facts regarding Abdelmaseh's authorization, as well as whether Arce used the GOLD STAR® logo as a basis for the Design.  Under such circumstances, the Court does not find that the pending motion is likely to be dispositive absent additional discovery.  Accordingly, the Court **denies** the motion to stay discovery.

## IV. CONCLUSION

For the foregoing reasons, the Court **grants** the motion to request advice from the Register of Copyrights and **denies** the motion to stay.

**IT IS SO ORDERED.**

July 3, 2019

_____
James V Selna
U.S. District Court Judge

19